# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JOSEPH M. DROPP, et al., | Case No.: 2:18-cv-00247-APG-GWF |
| Plaintiffs | **Order** |
| v. | [ECF Nos. 27, 31, 32, 35-43] |
| DIAMOND RESORTS INTERNATIONAL, INC., et al., | |
| Defendants | |

Plaintiffs Joseph Dropp, Mary Dropp, Robert Levine, Susan Levine, and Kaarina Pakka sue various parties related to the offer and sale of "points" that can be used to reserve rooms at Diamond resorts and hotels. The plaintiffs spent thousands of dollars buying the points. They filed this proposed class action asserting the defendants falsely represented that the points would increase in value and could be sold for a profit. The plaintiffs contend that constitutes the offer and sale of unregistered securities in violation of the Securities Act of 1933. They also assert control person liability against defendants Michael Flaskey, Kenneth Siegel, Apollo Management VIII, L.P., and Apollo Management, LLC.

The plaintiffs move for appointment of certain individuals as lead plaintiffs, approval of class counsel, and consolidation of later-filed actions. ECF Nos. 27, 31, 32. The defendants move to compel arbitration and dismiss the Dropp and Levine plaintiffs based on arbitration provisions in the purchase agreements. ECF Nos. 37, 41, 42. The defendants also request that I strike the complaint's class allegations because the Dropp and Levine plaintiffs must individually arbitrate their claims. ECF No. 38, 43. Finally, the defendants move to sever and transfer Pakka's claims because her purchase agreement contains a forum selection clause that requires

any dispute be brought in Hawai'i. ECF Nos. 35, 36, 39, 40. The plaintiffs oppose arbitration, striking the class allegations, and severance and transfer of Pakka's claims. However, Pakka agrees to transfer her claims if the other plaintiffs are dismissed.

The parties are familiar with the facts, and I will not repeat them here except where necessary. I grant the motions to compel arbitration. The arbitration provisions require individual arbitration of the Dropp and Levine plaintiffs' claims. Those provisions are enforceable, and the question of whether the purchase agreements are void is a matter for the arbitrator to decide. I therefore dismiss all of the Dropp and Levine plaintiffs' claims. I transfer Pakka's claims to the District of Hawai'i, in conformity with the forum selection clause in her purchase agreement and her consent to transfer if I dismiss the Dropp and Levine plaintiffs. Finally, because I am dismissing the Dropp and Levine plaintiffs and transferring Pakka's claims, I deny as moot the plaintiffs' motions to appoint lead plaintiffs, to approve class counsel, and to consolidate later-filed actions.

## I. ANALYSIS

### A. Motions to Compel Arbitration and to Dismiss

The Dropps entered into two purchase and security agreements with defendant Diamond Resorts U.S. Collection Development, LLC (Diamond Collection) that contain arbitration provisions. ECF Nos. 37-2; 37-3. The Levine plaintiffs also entered into two purchase and security agreements with Diamond Collection, one that contains an identical arbitration provision (ECF No. 37-4) and one that contains a similar arbitration provision (ECF No. 37-5).

The arbitration provision in three of the four agreements provides that "any Claim between Purchaser and [a] Company Party[1] shall be resolved by binding individual (and not class) arbitration." *See, e.g.*, ECF No. 37-2 at 18. The provision also contains a clause precluding participation in a "class action in court or in class-wide arbitration . . . with respect to any claim." *Id.* A claim is defined as "any legal claim, dispute or controversy between any Company Party and Purchaser, including statutory, contract and tort disputes of all kinds and disputes involving requests for declaratory relief, injunctions or other equitable relief." *Id.* However, a claim does not include "any dispute concerning the validity and effect" of the agreement's class action ban. *Id.* The class action ban itself makes clear that "any dispute about the validity or effect of the . . . Class Action Ban shall be resolved by a court and not an arbitrator . . . ." *Id.*[2]

A party seeking to compel arbitration under the Federal Arbitration Act (FAA) bears the burden of showing "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or equity for the revocation of any contract." 9 U.S.C. § 2. Thus, a "party seeking to avoid enforcement of an arbitration agreement can only invoke a defense that would be available to a party seeking to

---

[1] Company Party means Diamond Collection and all of its affiliated companies, officers, and directors. ECF No. 37-2 at 18.

[2] The Levine's 2018 agreement is more specific about what questions are for the court versus the arbitrator. That agreement states that a "claim" does not include "disputes about the validity, enforceability, coverage or scope of this [arbitration] Provision or any part thereof, which are for a court to decide, provided that disputes about the validity or enforceability of this Agreement as a whole are for the arbitrator to decide . . . ." ECF No. 37-5 at 5.

3

avoid the enforcement of any contract," and cannot rely on "a defense that is only applicable to arbitration agreements." *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005).

The plaintiffs do not dispute that they signed the purchase agreements or that their claims in this case generally fall within the parameters of the arbitration provisions. Instead, they offer several reasons why those provisions are unenforceable.

### 1. Whether the Entire Agreement is Void

The plaintiffs argue the purchase agreements as a whole are void because under federal law, contracts for the sale of unregistered securities are void or voidable. They thus contend the arbitration provision, as part of a void contract, is also void and unenforceable.

Whether the contract as a whole is void is a question for the arbitrator. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) (stating that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance"). I may "properly exercise jurisdiction over claims raising (1) defenses existing at law or in equity for the revocation of (2) the arbitration clause itself." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1120 (9th Cir. 2008); *see also Rent-A-Ctr., W., Inc.*, 561 U.S. at 71 (stating "the basis of challenge [must] be directed specifically to the agreement to arbitrate before the court will intervene"). Because this argument is directed at the entire contract, and not just the arbitration provisions, I do not consider it.

### 2. Exercise of Statutory Rights

The plaintiffs argue that requiring them to arbitrate their securities claim would preclude their ability to bring it at all. They contend that to prove the defendants sold unregistered securities, they need to show that the defendants operated through a common scheme of

4

misrepresentations. They also argue it conflicts with their statutory right to proceed as a class under the Private Securities Litigation Reform Act of 1995 (PSLRA).

I may consider both of these arguments because they challenge the enforceability of the arbitration provision itself, rather than the purchase agreements generally. Additionally, these arguments also challenge the class action ban in the purchase agreements, and those agreements expressly reserve challenges to the class action ban to the court.

An arbitration provision may be invalidated on public policy grounds if it results in a "prospective waiver of a party's right to pursue statutory remedies." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (emphasis and quotation omitted). The plaintiffs do not explain how requiring them to proceed in individual arbitration will preclude them from pursuing a securities claim. Nothing prevents each plaintiff from laying out for the arbitrator the entire alleged scheme to support the claim in each case that the defendants sold unregistered securities. It precludes them only from jointly arbitrating the cases. This argument therefore does not support invalidating the arbitration provision or the class action ban. *See id.* at 236 (holding that a class-action waiver did not render an arbitration clause invalid because individual arbitration adequately ensured "effective vindication" of a federal right).

The plaintiffs alternatively contend that the PSLRA provides a right to bring a securities class action that an arbitration clause cannot take away. As a general matter, "arbitration agreements are equally applicable to statutory claims as to other types of common law claims." *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 725 (9th Cir. 2007). However, the FAA "may be overridden by a contrary congressional command." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987). The party opposing arbitration bears the burden of showing that "Congress intended to preclude a waiver of judicial remedies for the statutory rights

at issue." *Id.* at 227. That intent "will be deducible from [the statute's] text or legislative history, . . . or from an inherent conflict between arbitration and the statute's underlying purposes." *Id.* (internal citation and quotation omitted).

The Supreme Court has "rejected efforts to conjure conflicts between the Arbitration Act and other federal statutes." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1627 (2018). "[E]ven a statute's express provision for collective legal actions does not necessarily mean that it precludes individual attempts at conciliation through arbitration." *Id.* (quotation omitted). The "absence of any specific statutory discussion of arbitration or class actions is an important and telling clue that Congress has not displaced the Arbitration Act." *Id.*

The PSLRA provides extensive procedures for class actions under the Securities Act beyond those required for class actions under Federal Rule of Civil Procedure 23. *See* 15 U.S.C. § 77z-1. Although the PSLRA codifies those procedures, it does not specifically preclude individualized arbitration of Securities Act claims. Rather, it places more demanding requirements on the parties and the court in securities class action cases. The Act was aimed at curbing abuses in securities class actions. H.R. Rep. 104-369. The statutory language and legislative history do not reflect a congressional intent to enshrine a non-waivable federal right to proceed as a class in a judicial forum in securities cases.

Additionally, there is no inherent conflict between the FAA and the Securities Act's underlying purposes. "A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow." *Epic Sys. Corp.*, 138 S. Ct. at 1624 (quotation omitted). That intention "must be clear and manifest." *Id.* (quotation omitted). There is a strong presumption against repeal by implication. *Id.*

Arbitration of Securities Act claims is generally permissible. *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484-86 (1989). Nothing about the class action procedures of the PSLRA suggests an aggrieved person could not fulfill the Securities Act's enforcement purposes through individualized arbitration, just as he or she could through an individualized lawsuit. Had Congress intended to preclude individualized arbitration in securities cases, it could have said so. *See Epic Sys. Corp.*, 138 S. Ct. at 1626 (noting that "when Congress wants to mandate particular dispute resolution procedures it knows exactly how to do so," and that "Congress has likewise shown that it knows how to override the Arbitration Act when it wishes").

The plaintiffs have not met their burden of showing that Congress intended to preclude individualized arbitration for Securities Act claims. I therefore reject the plaintiffs' argument that the arbitration provisions and the class action bans are unenforceable as irreconcilable with the Securities Act.

### 3. Arbitration Clauses in Registration Statements

The plaintiffs argue that the Securities and Exchange Commission (SEC) does not allow arbitration clauses in registration statements, so it would not allow an arbitration clause in the analogous situation of an offering of securities. They thus contend that if the defendants had properly registered the securities, the SEC would not have allowed them to insert an arbitration provision in the purchase agreements, so the provision should be unenforceable where the defendants dodged their duty to register.

This challenge is directed solely at the arbitration provision, rather than the purchase agreements as a whole, so I may consider it. However, § 2 of the FAA permits arbitration agreements to be invalidated only "by generally applicable contract defenses, such as fraud,

duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). This defense is directed at the fact that an agreement to arbitrate is at issue. It is not a generally applicable contract defense. This argument therefore does not support a ruling that the arbitration provisions are unenforceable under the FAA.

### 4. Procedural and Substantive Unconscionability

The plaintiffs argue the arbitration provisions are unenforceable because they are procedurally and substantively unconscionable. As to procedural unconscionability, the plaintiffs contend the provisions are part of adhesion contracts that were presented to the plaintiffs on a take-it-or-leave-it basis without time for them to consider outside the defendants' high pressure sales pitch or to obtain independent legal advice. The plaintiffs argue the provisions are substantively unconscionable because they require the plaintiffs to give up their statutory rights.

Because this challenge is to the enforceability of the arbitration provisions rather than the purchase agreements as a whole, it is a question for the court, not the arbitrator. Unconscionability is a generally applicable contract defense that "may be applied to invalidate arbitration agreements without contravening § 2" of the FAA. *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (quotation omitted). The purchase agreements, by their terms, are governed by Nevada law. ECF Nos. 37-2 at 7; 37-3 at 8; 37-4 at 7; 37-5 at 6. "Nevada law requires both procedural and substantive unconscionability to invalidate a contract as unconscionable." *U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32, 40 (2018) (en banc).

The plaintiffs' only argument for why the arbitration provisions are substantively unconscionable is that they require the plaintiffs to forego their claims under the Securities Act. But as discussed above, that is incorrect. The plaintiffs will be able to arbitrate their Securities Act claims, but individually and not as a class. The provisions therefore are not substantively unconscionable. Because a finding of unconscionability requires both substantive and procedural unconscionability, the arbitration provisions are not unenforceable as unconscionable.

But even if I considered the issue, the arbitration provisions also are not procedurally unconscionable. Even accepting as true that the defendants engaged in a high pressure sales pitch, the purchasers could opt out of the arbitration provisions within 30 days without impacting any other rights under the agreements. *See, e.g.*, ECF Nos. 37-2 at 18 ("Opting out of arbitration will not affect any other provision of this agreement."); 37-5 at 6 ("Rejection of arbitration will not affect any other term of this Agreement."). Consequently, the arbitration provisions were not take-it-or-leave-it provisions. Additionally, the arbitration provisions contained other procedural protections, including that Diamond Collection agreed to pay all of the arbitrator's fees and the purchaser's reasonable attorney's fees and expenses if the purchaser prevails; that the arbitration may take place at a location reasonably convenient for the purchasers; and that the arbitrator may award any remedy that would be available in an individual court proceeding.

The arbitration provisions are neither substantively nor procedurally unconscionable. This argument therefore does not support a ruling that the arbitration provisions are unenforceable under the FAA.

### 5. Apollo Defendants

The plaintiffs argue that even if the arbitration provisions are enforceable, they cannot be forced to arbitrate with defendants Apollo Management VIII, L.P. or Apollo Global

9

Management, LLC because these entities are not signatories to the purchase agreements. The defendants assert that the Apollo defendants are affiliates of Diamond Collection and so fall within the provisions' parameters. Alternatively, they argue that because all of the claims are intertwined, the entire matter should be sent to arbitration under an estoppel theory.

"[N]onsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles[,] including equitable estoppel." *Dylag v. W. Las Vegas Surgery Ctr., LLC*, 719 F. App'x 568, 570 (9th Cir. 2017) (quotation omitted). I apply state law to determine whether equitable estoppel applies. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009).

The parties' agreements designate Nevada law as controlling. Nevada recognizes the doctrine of equitable estoppel in the context of determining when a nonsignatory to an arbitration agreement may compel or be compelled to arbitrate. *Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 189 P.3d 656, 660-61 (Nev. 2008). Equitable estoppel may apply in two circumstances. "First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *Hard Rock Hotel, Inc. v. Eighth Jud. Dist. Ct. of State in & for Cty. of Clark*, 390 P.3d 166, 2017 WL 881877, at *2 (Nev. 2017) (unpublished).[3] Under this first theory, when "each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Id.* (quotation and internal quotation marks

---

[3] *Hard Rock Hotel, Inc.* involved a jury trial waiver, not an arbitration provision. However, that court referred to the Fourth Circuit's framework for analyzing arbitration provisions and stated "there does not appear to be a different framework that is used in the context of jury trial waivers." *Hard Rock Hotel, Inc.*, 390 P.3d 166, 2017 WL 881877, at *1 n.4.

10

omitted). "Second, application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* (quotation omitted).

Equitable estoppel applies in this case under both theories. Under the first theory, the plaintiffs' Securities Act claim refers to and presumes the existence of the purchase agreements because it is through those agreements that the defendants allegedly sold unregistered securities. Under the second theory, the plaintiffs allege the Apollo defendants are liable as control persons for the Diamond defendants' actions. ECF No. 1 at 36-37. Specifically, the complaint alleges that the Apollo defendants had the power to influence the Diamond defendants and exercised that power "to cause" the Diamond defendants "to engage in the unlawful acts and conduct complained of herein." *Id.* at 37. The plaintiffs therefore have alleged substantially interdependent and concerted misconduct by the signatory, Diamond Collection, and the nonsignatories, the Apollo defendants as control persons.[4] I therefore enforce the arbitration provisions as to the Apollo defendants.

### 6. Dismiss or Stay

The defendants move to dismiss the Dropp and Levine plaintiffs' claims once I compel arbitration. The plaintiffs request that I stay the matter because it is possible that the arbitrator will rule the agreements are void.

---

[4] A divided panel of the Ninth Circuit predicted in an unpublished disposition that "Nevada would require that the allegations of substantially interdependent and concerted misconduct be founded in or intimately connected with the obligations of the underlying agreement." *Dylag*, 719 F. App'x at 571 (quotation omitted). Assuming without deciding that this is the standard under Nevada law, the plaintiffs' Securities Act claims are founded in or intimately connected with the obligations of the purchase agreements. The plaintiffs seek to rescind the agreements, thus obviating the parties' mutual obligations under them. ECF No. 1 at 37-38.

11

I may stay this case pending resolution of the arbitration proceedings. 9 U.S.C. § 3. Alternatively, where an arbitration provision bars all of a plaintiff's claims, I may dismiss them. *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).

The arbitration provisions bar the Dropp and Levine plaintiffs' claims. I therefore dismiss them without prejudice to those plaintiffs pursuing them in arbitration.

### B. Sever and Transfer Pakka

The defendants argue that Pakka's claims should be severed and transferred to Hawai'i based on the forum selection clause in her agreement. Pakka consents to the severance and transfer of her case to Hawai'i if I dismiss the Dropp and Levine plaintiffs' claims. ECF No. 62 at 30. Because I have dismissed the Dropp and Levine plaintiffs' claims, I transfer Pakka's claims to the District of Hawai'i.

### C. Motions to Strike

The defendants argue that once I compel arbitration, I should strike the class allegations in the complaint because the Dropp and Levine plaintiffs must arbitrate individually. Because I have dismissed the Dropp and Levine plaintiffs' claims and transferred Pakka's claims, the motions to strike the class action allegations are moot.

### D. The Plaintiffs' Motions

Because I am dismissing the Dropp and Levine plaintiffs' claims, and transferring Pakka's claims, I deny as moot the plaintiffs' motions to appoint lead plaintiffs, to approve class counsel, and to consolidate later-filed actions.

////

////

////

## II. CONCLUSION

IT IS THEREFORE ORDERED that the plaintiffs' motions for appointment of lead plaintiffs **(ECF No. 27)**, for approval of class counsel **(ECF No. 31)**, and for consolidation of later-filed actions **(ECF No. 32) are DENIED as moot**.

IT IS FURTHER ORDERED that the defendants' motions to compel arbitration and to dismiss **(ECF Nos. 37, 41, 42) are GRANTED**. Plaintiffs Joseph Dropp, Mary Dropp, Robert Levine and Susan Levine must individually arbitrate their claims against all defendants in this action. I therefore dismiss their claims, without prejudice to pursue them in arbitration.

IT IS FURTHER ORDERED that the defendants' motions to strike **(ECF Nos. 38, 43) are DENIED as moot**.

IT IS FURTHER ORDERED that the defendants' motions to sever and transfer plaintiff Kaarina Pakka's claims **(ECF Nos. 35, 36, 39, 40) are GRANTED**. The clerk of court is instructed to transfer the complaint as to plaintiff Kaarina Pakka only to the United States District Court for the District of Hawai'i.

DATED this 25th day of January, 2019.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE